UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL HOWARD,<br><br>                Plaintiff,<br>    v.<br>T. BAILEY, *et al.*,<br><br>                Defendants. | Case No. 3:22-cv-00064-MMD-CSD<br><br>ORDER |

## I. SUMMARY

*Pro se* Plaintiff Michael Howard brings this action under 42 U.S.C. § 1983 against Defendants Ken Fye and Travis Bailey for their alleged use of excessive force during his arrest. Before the Court are Fye's motion to dismiss for failure to prosecute (ECF No. 56),[1] Fye's motion for summary judgment (ECF No. 61),[2] and Bailey's motion for summary judgment (ECF No. 63).[3] As explained below, the Court denies both of Fye's motions and grants Bailey's motion.

## II. DISCUSSION

As an initial matter, the Court denies Fye's motion to dismiss for failure to prosecute (ECF No. 56) under Federal Rule of Civil Procedure 41(b) because Howard has continued to prosecute this action by timely responding to this motion to dismiss (ECF No. 59), timely responding to Defendants' motions for summary judgment (ECF No. 67),

---

[1]Howard responded (ECF No. 59), and Fye replied (ECF No. 60).

[2]Howard responded (ECF No. 67), and Fye replied (ECF No. 68). Bailey joined Fye's motion for summary judgment (ECF No. 63 at 9.)

[3]Howard did not file a separate response to Bailey's motion for summary judgment, and Bailey did not file a reply. The Court however liberally construes Howard's response to Fye's motion for summary judgment as also a response to Bailey's motion for summary judgment, particularly given that Bailey joined Fye's motion and Howard appears to respond to Bailey's statements in a portion of his response (ECF No. 67 at 9).

participating in a settlement conference (ECF No. 69), updating his address with the Court (ECF No. 70), and filing motions for status checks (ECF Nos. 73, 74). The Court now turns to the merits of Defendants' motions for summary judgment, addressing their arguments on Fye's use of force, Bailey's liability as a bystander, and qualified immunity as a defense.

### A. Excessive Force Claims

A claim of excessive force during an arrest is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388 (1989). To determine whether the use of force by a law enforcement officer was excessive under the Fourth Amendment, a court must assess whether it was objectively reasonable "in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." *Id.* at 397 (citations omitted). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (internal quotation marks and citations omitted).

The Ninth Circuit has repeatedly recognized that excessive force cases are rarely suited for summary judgment. "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the circuit court has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citations omitted).

///

### 1.     Use of Force

Here, Fye argues that any force he used during Howard's arrest was reasonable. (ECF No. 61 at 10.) Specifically, he claims he "merely utilized verbal commands and held onto [Howard]'s right wrist" and that Howard was not pulled out of the vehicle or thrown or slammed onto the ground. (*Id.*) Fye contends this is corroborated by Bailey's declaration, transport officer Ian Hamm-Carl's observations, video footage from Hamm-Carl's body camera and interior vehicle camera, Howard's booking photograph, and Howard's medical records. (*Id.*)

According to Bailey's declaration, Fye "grabbed [Howard]'s wrists," "removed him from the vehicle," "commanded [Howard] to lie on the ground," and Howard complied. (ECF No. 61-2 at 2.) Bailey states that he "did not observe any slamming or other force used." (*Id.* at 3.) Hamm-Carl's declaration appears to indicate that he was not present during the alleged use of force incident and therefore does not directly support Fye and Bailey's contentions that Fye only used verbal commands and grabbed Howard's wrist(s). (ECF No. 61-3 at 2.) The video footage from Hamm-Carl's interior vehicle camera during Howard's transport, the video footage from Hamm-Carl's body camera during Howard's booking, Howard's booking photograph, and Howard's medical records are tied to events occurring after the alleged use of force incident and therefore also do not directly corroborate Defendants' contentions here.

In contrast to Defendants' account, Howard contends that Fye grabbed his wrist, pulled him from the vehicle, and slammed him and his face to the ground while his feet were still in the van tangled in his seatbelt. (ECF No. 5 at 4-5 (Howard's first amended complaint allegations sworn under penalty of perjury[4]); ECF No. 67 at 2.) There is no admitted video footage or other direct evidence of the use of force incident to confirm or

---

[4]When a *pro se* litigant opposes summary judgment, their contentions in motions and pleadings may be considered as evidence to meet the non-moving party's burden to the extent: (1) contents of the document are based on personal knowledge; (2) they set forth facts that would be admissible into evidence; and (3) the litigant attested under penalty of perjury that they were true and correct. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citations omitted).

3

deny either side's version of events.[5] The Court therefore finds that there is a genuine dispute of material fact as to what type and amount of force was used by Fye and thus whether such force was excessive under the circumstances.

### 2.  Resulting Injuries

Howard contends that he suffered bodily harm requiring medical and dental treatment, including injuries to his teeth and shoulder. (ECF No. 5 at 4, 9; ECF No. 67 at 3.) Defendants argue that the record shows Howard did not sustain any injuries during the arrest and therefore no unconstitutional force was used. (ECF No. 63 at 11; ECF No. 61 at 11.) The Court notes that the test for excessive force is whether the force used was reasonable under the circumstances, not whether injuries were sustained from the force used. Actual injury is but one consideration in determining whether the use of force was excessive.[6] To the extent Defendants are arguing that the evidence of injuries or lack thereof shows Howard could not have been slammed down to the ground, as explained below, the Court finds that Defendants' proffered evidence does not necessarily contradict Howard's version of events, and genuine disputes of material fact exist as to whether Howard sustained bodily injury from the alleged use of force.

First, Fye argues that Hamm-Carl's declaration corroborates his story because Hamm-Carl did not observe any injuries to Howard and Howard did not complain of any pain or injuries while on scene, during transport, or during the booking process. (ECF No. 61 at 10; ECF No. 61-3 at 2-3.) But simply because Hamm-Carl could not readily perceive an injury or because Howard did not complain about an injury to him does not necessarily mean there were no injuries. In fact, Howard provides a reasonable explanation for not

---

[5]Defendants state that they were not wearing body cameras as plain-clothed detectives. (ECF No. 68 at 6.) And Howard's copy of gas station surveillance video purportedly capturing the incident was allegedly thrown away by prison officials after Howard sent it to the Court and it was sent back to him. (ECF No. 67 at 4, 15.)

[6]"To gauge the type and amount of force used, [courts] assess both 'the risk of harm and the actual harm experienced.'" *Sabbe v. Washington Cnty. Bd. of Commissioners*, 84 F.4th 807, 821 (9th Cir. 2023) (citation omitted). "The greater the risk of harm and the actual harm involved, the greater the governmental interest must be to justify the use of force." *Id.* (citation omitted).

complaining about his injuries during his arrest and booking: he "kept [his] mouth shut" because he was "scared to say anything until [he] had all [his] charges" due to a past incident where extra charges were added after he complained about having been beat up by officers. (ECF No. 67 at 3.)

Fye also points to Hamm-Carl's video footage and Howard's booking photograph as not depicting any injuries or outward indications of pain. (ECF No. 61 at 10-11.) Howard counters that the booking photograph shows light red bruising and swelling on the left side of his face. (ECF No. 67 at 5.) The Court finds this plausible, as the colored photograph appears to show Howard's left cheekbone area as slightly red and raised, as compared with the right side of his face. (ECF No. 61-3 at 5.) Moreover, at the beginning of the interior vehicle footage, Howard appears to grimace in pain when entering and sitting down in the vehicle. (ECF No. 61-6 at 00:18). The footage is in black and white, so the Court cannot tell whether there is any redness on his face at that point.

As Bailey points out (ECF No. 63 at 5), Howard does complain that his handcuffs are too tight while sitting in the vehicle, but this is not necessarily inconsistent with Howard's assertion that he was scared to complain about the alleged excessive force incident and resulting injuries. Howard also continues to grimace in pain at certain points in the footage, although it is unclear whether it is from his handcuffs or alleged injuries. (ECF No. 61-6 at 22:42, 22:52, 23:10-23:15.) Bailey points out that Howard and his girlfriend (who was also arrested) kiss at two points while in the vehicle together and argues this contradicts Howard's assertions of injuries, particularly dental injuries. (ECF No. 63 at 5.) But the kisses appear to be light and do not necessarily foreclose the possibility of injuries. (ECF No. 61-6 at 26:52, 33:10-33:15.)

Hamm-Carl's body camera footage of Howard during the booking process does not appear to show any obvious, external injuries on Howard's face. (ECF No. 61-4.) But as Howard argues, it is possible that he suffered internal injuries that were not outwardly obvious at the time. (ECF No. 67 at 5.)

Defendants next point to Howard's medical records. (ECF No. 61 at 11; ECF No. 63 at 11.) Howard's dental records indicate that he did not complain of tooth pain until 21 days after his arrest and that his eventual teeth extractions on the left side of his mouth were as a result of tooth decay and periodontal disease. (ECF No. 61-7 at 54, 60-65, 104-09.) Howard's medical records also indicate that he did not report any shoulder pain until 34 days after the arrest and that it was noted he had a history of right shoulder pain related to a "fall at work." (*Id.* at 72, 77.) On the other hand, Howard points to his medical inquiries where he mentions his teeth and shoulder were injured when he was slammed to the ground during his arrest, as well as an x-ray image that appears to show at least one jagged tooth. (ECF No. 67 at 7, 21, 23; ECF No. 61-7 at 67, 72.) And even if Howard had an existing right shoulder injury at the time of the arrest, that injury could have been exacerbated by Fye's use of force.[7]

Thus, even considering Howard's medical records, it still may be the case that Howard's teeth and shoulder pain and injuries were at least in part caused by Fye's use of force (and the full extent of the pain and injuries did not manifest until later), that Howard was slammed onto the ground, and that such force was unreasonable given the circumstances. Accordingly, viewing all facts and drawing all inferences in the light most favorable to Howard as the non-moving party, the Court finds that a reasonable juror could find that Howard was unreasonably slammed onto the ground by Fye and sustained injuries as a result of that use of force, in violation of his Fourth Amendment rights. *See Kaiser*, 793 F.2d at 1103.

---

[7]Fye argues that it is illogical and implausible for Howard to have been pulled out by his right wrist and somehow his right shoulder and left side of his face were slammed onto the asphalt. (ECF No. 68 at 6.) However, given that Howard's right wrist was allegedly pulled, his right shoulder injury could have arisen from that pulling, while his left side of his face was slammed to the ground. And if Howard's feet were still in the van tangled up in his seatbelt when he was pulled out, as he claims (ECF No. 5 at 4-5; ECF No. 67 at 2), his body could have been contorted in such a way for his right shoulder and left side of his face to have both been slammed to the ground at the same time or close in time to each other.

**B.     Bystander Liability**

Bailey argues that, even if a constitutional violation exists, he was not an integral participant and cannot be held liable. (ECF No. 63 at 11.) "[A]n actor may be deemed to have 'cause[d] [a plaintiff] to be subjected' to a constitutional violation, 42 U.S.C. § 1983, and thus to be an integral participant in the violation, only if (1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury." *Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022).

First, Bailey asserts that there was no common plan to use any specific amount of force during Howard's arrest and that the use of force evolved based on the circumstances. (ECF No. 63 at 12-13.) There is no evidence of any common plan to use a specific type or amount of force on Howard. Howard's only assertions about Bailey's allegedly wrongful conduct is that Bailey should have protected him by conducting a "peaceful" arrest and "intervening" when Fye "ripped [him] from [his] vehicle"—which do not support a finding of a common plan. (ECF No. 5 at 4.)

Second, Bailey argues he did not initiate or facilitate the use of force. (ECF No. 63 at 13.) Howard's assertion that Bailey failed to intervene after the fact is not evidence that Bailey "set in motion" Fye's use of force. As far as "facilitation" goes, Bailey and Fye's declarations simply indicate that Bailey opened the passenger door to the vehicle where Howard was sitting and then Fye grabbed Howard by the wrist(s). (ECF No. 63-2 at 2; ECF No. 63-3 at 4.) But the Court finds that, by simply opening the vehicle door, Bailey would not have known or should not have reasonably known that Fye would slam Howard to the ground.

Accordingly, there is no evidence by which a reasonable juror could find that Bailey was an integral participant to the alleged use of excessive force, so the Court grants Bailey's motion for summary judgment.

### C. Qualified Immunity

Fye argues that he is entitled to qualified immunity. (ECF No. 61 at 13.) "In determining whether a state official is entitled to qualified immunity in the context of summary judgment, [courts] consider (1) whether the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional right and (2) whether that right was 'clearly established at the time of the violation.'" *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 671 (9th Cir. 2021) (citation omitted). Denying judgment as a matter of law is particularly appropriate where factual disputes remain that bear on an ultimate finding of qualified immunity. *See, e.g.*, *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210-11 (9th Cir. 2008) (noting that where "facts material to the qualified immunity determination are in dispute," summary judgment is inappropriate). The Court may exercise "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court exercise its discretion to first address whether the evidence is sufficient to show that Fye's conduct violated a constitutional right. For the same reasons discussed above, viewing the evidence in the light most favorable to Howard, a reasonable fact finder could conclude that Fye used excessive force and violated Howard's Fourth Amendment rights. Accordingly, the Court finds that Fye is not entitled to qualified immunity at this stage. *See, e.g.*, *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1160 (9th Cir. 2014) ("If genuine issues of material fact exist that prevent a determination of qualified immunity at summary judgment, the case must proceed to trial.") (internal brackets, quotation marks, and citation omitted).

### III. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant Ken Fye's motion to dismiss (ECF No. 56) is denied.

It is further ordered that Defendant Ken Fye's motion for summary judgment (ECF No. 61) is denied.

It is further ordered that Defendant Travis Bailey's motion for summary judgment (ECF No. 63) is granted.

It is further ordered that, under LR 16-5, the Court finds that it is appropriate to refer this case to Judge Denney to conduct a settlement conference. If the parties do not settle, the Joint Pretrial Order is due within 30 days of the date the settlement conference is held.

DATED THIS 19th Day of December 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE